UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRUCE PARKER,

        Plaintiff,

Case No. 2:18-cv-55

v.

Honorable Gordon J. Quist

UNKNOWN PARTY et al.,

        Defendants.
_____/

**OPINION AND ORDER**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Horton, Miller, Brown, Martin, De Stabile, Simpson, Belinger, Canlas, LaPlaunt, and Green, and dismiss Plaintiff's claims against them without prejudice.

**Discussion**

    **I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues URF Warden Connie Horton, URF Inspectors Unknown Miller and Unknown Brown, URF Sergeants Martin and Belinger, URF Corrections Officers De Stabile, Simpson, and Green; URF Doctor Canlas and URF Health Unit Manager and Registered Nurse Melissa LaPlaunt (herein collectively "the URF Defendants"). Plaintiff also sues an unknown party identified as the Correctional Facilities Administration (CFA) Transfer Coordinator. The events about which he

complains with respect to all Defendants, except the CFA Transfer Coordinator, occurred at URF. Plaintiff's claim against the CFA Transfer Coordinator arose while he was placed at the Carson City Correctional Facility (DRF) in Carson City, Michigan.

With respect to the CFA Transfer Coordinator, Plaintiff alleges:

> 22. On January 1, 2018 Plaintiff mailed a letter to defendant CFA Transfer Coordinator informing him/her of defendant's and officials on a pending lawsuit intentions of retaliating against plaintiff by sending plaintiff to a facility he made them aware of that had previously on his last stay there resulted in plaintiff being bombarded with racial epithets and targeted and finally sexually harassed. Plaintiff explained to defendant CFA Transfer Coordinator that he feared for his life being sent to Chippewa Correctional Facility and prayed that he/she wouldn't allow defendant's at Carson City Correctional Facility to transfer plaintiff to Chippewa Correctional Facility in retaliation of plaintiff refusing to drop or dismiss his pending civil suit against Carson City Officers. Plaintiff begged defendant CFA Transfer Coordinator to not approve the transfer if the request ever came from Carson City Officials.
>
> 23. On January 16, 2018 Plaintiff was transferred [sic] from Carson City Correctional Facility to Chippewa Correctional Facility. This transfer was approved by defendant CFA Transfer Coordinator. On this same day in question plaintiff filed a grievance against defendant CFA Transfer Coordinator based on deliberate indifference to plaintiffs health and safety by approving plaintiff's transfer to a facility he/ she knew conditions were objectively cruel and unreasonable. See (Grievance Identifier: URF/2018/01/0208/24C).

(Compl., ECF No. 1, PageID.6-7.) The two paragraphs quoted above are the entirety of Plaintiff's factual allegations against the CFA Transfer Coordinator. Based on those allegations, Plaintiff contends that the CFA Transfer Coordinator was deliberately indifferent to a substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment. Plaintiff seeks compensatory and punitive damages.

The remainder of Plaintiff's factual allegations relate to the URF Defendants' treatment of Plaintiff upon his arrival at URF. Plaintiff provides a day-by-day account of incidents involving the URF Defendants beginning on the date of Plaintiff's arrival on January 16, 2018, and ending March 14, 2018. (*Id*., PageID.7-19.) During these incidents, the URF Defendants

threatened to retaliate against Plaintiff for filing grievances, hurled racial epithets at him, filed false misconducts against him, destroyed Plaintiff's legal materials and property, physically assaulted Plaintiff, sexually assaulted Plaintiff during shakedowns, failed to provide medical treatment for the resulting injuries, performed inadequate investigations, reached false conclusions regarding Plaintiff's complaints, and refused to provide Plaintiff the documents necessary to pursue grievances and appeals. Plaintiff contends the URF Defendants: (1) retaliated against him for filing grievances in violation of Plaintiff's First Amendment rights; (2) were deliberately indifferent to substantial risks of serious harm to Plaintiff and to Plaintiff's serious medical needs in violation of Plaintiff's Eighth Amendment rights; and (3) failed to conduct proper hearings and investigations in violation of Plaintiff's Fourteenth Amendment due process rights. Plaintiff seeks compensatory and punitive damages from each URF Defendant as well.

## II. Misjoinder

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free reign to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1248, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action

3

as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is

4

alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D

> failed to pay a debt, and E infringed his copyright, all in different transactions --
> should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3rd Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Defendant CFA Transfer Coordinator is the first Defendant named in the action. Plaintiff's allegations against CFA appear first in the complaint and are also first in time. Plaintiff's claim against the CFA Transfer Coordinator became factually and legally complete when Plaintiff's transfer was approved. It is a discrete incident, isolated in time and place from Plaintiff's additional allegations against the URF Defendants. Plaintiff makes no allegation against a URF Defendant that is related to the CFA Transfer Coordinator's allegedly improper transfer of Plaintiff to URF. As a result, no claim against any URF Defendant is transactionally related to Plaintiff's claim against Defendant CFA Transfer Coordinator.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-573 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings claims under 42 U.S.C. § 1983. For § 1983 claims filed in Michigan, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10);

*Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains occurred in January, February, and March of 2018, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop the URF Defendants—all Defendants other than Defendant CFA Transfer Coordinator—from the case, and dismiss Plaintiff's claims against the URF Defendants without prejudice to the institution of new, separate claims against those Defendants.[3] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

Accordingly,

**IT IS ORDERED** that Defendants Horton, Miller, Brown, Martin, De Stabile, Simpson, Belinger, Canlas, LaPlaunt, and Green will be **DROPPED** from this action because they are misjoined and Plaintiff's claims against them will be **DISMISSED WITHOUT PREJUDICE**.

Dated: May 31, 2018 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE

---

[3]Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another.