UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRUCE PARKER,

        Plaintiff,

v.

UNKNOWN PARTY et al.,

        Defendants.

_____/

Case No. 2:18-cv-55

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). The Court will dismiss Plaintiff's claims against the only remaining Defendant, Unknown Party (Correctional Facilities Administration (CFA) Transfer Coordinator), with prejudice for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

Plaintiff initially sued URF Warden Connie Horton, URF Inspectors Unknown Miller and Unknown Brown, URF Sergeants Martin and Belinger, URF Corrections Officers De Stabile, Simpson, and Green; URF Doctor Canlas and URF Health Unit Manager and Registered Nurse Melissa LaPlaunt (herein collectively "the URF Defendants"). Plaintiff also sued an unknown party identified as the CFA Transfer Coordinator. The events about which he complains with respect to all Defendants, except the CFA Transfer Coordinator, occurred at URF. Plaintiff's claim against the CFA Transfer Coordinator arose while he was placed at the Carson City Correctional Facility (DRF) in Carson City, Michigan. The Court previously dropped all parties other than the CFA Transfer Coordinator for misjoinder and dismissed the Plaintiff's claims against them without prejudice.

With respect to the CFA Transfer Coordinator, Plaintiff alleges:

22. On January 1, 2018 Plaintiff mailed a letter to defendant CFA Transfer Coordinator informing him/her of defendant's and officials on a pending lawsuit intentions of retaliating against plaintiff by sending plaintiff to a facility he made them aware of that had previously on his last stay there resulted in plaintiff being bombarded with racial epithets and targeted and finally sexually harassed. Plaintiff explained to defendant CFA Transfer Coordinator that he feared for his life being sent to Chippewa Correctional Facility and prayed that he/she wouldn't allow defendant's at Carson City Correctional Facility to transfer plaintiff to Chippewa Correctional Facility in retaliation of plaintiff refusing to drop or dismiss his pending civil suit against Carson City Officers. Plaintiff begged defendant CFA Transfer Coordinator to not approve the transfer if the request ever came from Carson City Officials.

23. On January 16, 2018 Plaintiff was transferred [sic] from Carson City Correctional Facility to Chippewa Correctional Facility. This transfer was approved by defendant CFA Transfer Coordinator. On this same day in question plaintiff filed a grievance against defendant CFA Transfer Coordinator based on deliberate indifference to plaintiffs health and safety by approving plaintiff's transfer to a facility he/ she knew conditions were objectively cruel and unreasonable. See (Grievance Identifier: URF/2018/01/0208/24C).

(Compl., ECF No. 1, PageID.6-7.) The two paragraphs quoted above are the entirety of Plaintiff's factual allegations against the CFA Transfer Coordinator. Based on those allegations, Plaintiff contends that the CFA Transfer Coordinator was deliberately indifferent to a substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment. Plaintiff seeks compensatory and punitive damages.

Plaintiff seeks compensatory and punitive damages from the CFA Transfer Coordinator.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that the CFA Transfer Coordinator demonstrated deliberate indifference to a substantial risk of harm to Plaintiff in violation of the Eighth Amendment.

The Cruel and Unusual Punishments Clause of the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Trop v. Dulles*, 356 U.S. 86 (1958). The clause therefore prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346.

An Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 1977 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate

indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4).

The reason for focusing on a defendant's mental attitude is to isolate those defendants who inflict punishment. *Farmer*, 511 U.S. at 839. The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Id.* at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*,

429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

Plaintiff's allegations fall short with respect to the objective and subjective components of an Eighth Amendment claim. The only harms Plaintiff "informed" the CFA Transfer Coordinator about were racial epithets and sexual harassment. An allegation that a prison official used racial slurs, although unprofessional and reprehensible, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985)); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude; *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). A risk of racial epithets, therefore, is not the sort of objectively serious harm that might support a claim for a violation of the Eighth Amendment.

Similarly, circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to

masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the

prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Even if Plaintiff meant to convey a risk of more serious harm than his allegations suggest, there are no allegations in the complaint that the CFA Transfer Coordinator was aware of such a risk and disregarded it. Although Plaintiff alleges he mailed a letter to the CFA Transfer Coordinator, there is nothing in the complaint to indicate that the CFA Transfer Coordinator received it nor is there any communication from the CFA Transfer Coordinator to permit an inference that the coordinator was aware of its content or its significance. Indeed, there is nothing in the complaint to indicate that the approval of the transfer occurred after the CFA Transfer Coordinator's receipt of the letter or that he or she received the letter at all. There are no factual allegations in the complaint indicating that it was the CFA Transfer Coordinator's intention to punish Plaintiff by exposing him to a significant risk of serious harm. Because Plaintiff's allegations fall short with respect to the objective and subjective components, he has failed to state a claim against the CFA Transfer Coordinator.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendant Unknown Party (CFA Transfer

Coordinator) will be dismissed with prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: May 31, 2018         /s/ Gordon J. Quist
                            GORDON J. QUIST
                            UNITED STATES DISTRICT JUDGE